Ella METCALF, etc., et al., Plaintiffs-Appellants,

v.

Harold O. SWANK, etc., et al., Defendants-Appellees.

No. 18136.

United States Court of Appeals, Seventh Circuit.

April 30, 1971.

Rehearing Denied July 1, 1971.

Reynolds, District Judge, dissented and filed opinion.

**1354**

Gordon H. S. Scott, Robert W. Bennett, Thomas P. Humphrey, Chicago, Ill., for appellants.

Edward V. Hanrahan, State's Atty., Thomas E. Brannigan, Asst. State's Atty., Chicago, Ill., William J. Scott, Atty. Gen. of Ill., Chicago, Ill., for appellees.

Before HASTINGS, Senior Circuit Judge, PELL, Circuit Judge, and REYNOLDS, District Judge.[1]

PELL, Circuit Judge.

This class action was brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, on behalf of all recipients of public aid in Illinois who are members of a family unit of two or more which pays more than $90.00 per month residence rental but receives $90.00 or less per month as a shelter allowance from the Illinois and the Cook County, Illinois, Departments of Public Aid.[2] Defendants are the respective directors of the departments and are charged by law with the enforcement of the Illinois Public Aid Code.

Section 12–4.11 of the Illinois Public Aid Code, Ill.Rev.Stat.1967, ch. 23, § 12–4.11, deals with public assistance shelter allowances and provides, in relevant part: "[T]he shelter standard for any recipient, exclusive of household furnishings and utilities, shall not exceed $90.00 per month, except for adjustments made in the manner authorized by § 12–14." Section 12–14, Ill.Rev.Stat.1967, ch. 23, § 12–14, provides that the Illinois Department of Public Aid may, after consultation with the Legislative Advisory Committee on Public Aid, authorize "deviations" from the $90.00 per month limitation.

Plaintiffs originally challenged the constitutionality of these provisions on their face. On November 12, 1968, a three judge court issued its opinion finding the statute constitutional on its face. Metcalf v. Swank, 293 F.Supp. 268 (N.D. Ill.1968). The court found that "the arbitrary nature of a flat maximum" was avoided in the statute by its provision for exceptions to the $90.00 maximum.[3] The court further construed the statute to require the granting of such exceptions whenever necessary to "provide a livelihood compatible with health and well-being," as stated in section 12–4.11. Having reached this conclusion, the three judge court remanded the case to a single judge for resolution of any factual questions that might remain.

---

1. Judge Reynolds of the United States District Court for the Eastern District of Wisconsin is sitting by designation.

2. The district court found that all but one of the representative plaintiffs have been granted shelter allowances sufficient to cover their shelter costs since this action was initiated. Only Mrs. Ella Metcalf, on behalf of herself and her five children, remains as a representative plaintiff.

3. We note that under Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), decided after the three judge opinion was issued, a statute imposing a flat maximum would not be *per se* unconstitutionally arbitrary.

Plaintiffs did not appeal the decision of the three judge court but rather filed an amended complaint before the single district judge. Count I of the amended complaint renewed the challenge to the statute on its face. Count II challenged the statutory provisions as applied. Count III challenged the provisions on state law grounds.

Count I was dismissed because previously decided by the three judge court. Count III was dismissed for want of pendent jurisdiction following the dismissal of Count II with which we are primarily concerned.

The district court dismissed Count II "for failure to exhaust available state administrative remedies * * *," and because it stated no "substantial constitutional claim [to] * * * justify the assumption of jurisdiction * * * absent exhaustion of available state administrative remedies." It is from this dismissal that plaintiffs appeal.

On this appeal, plaintiffs contend that exhaustion of state remedies is never required in actions brought pursuant to the Civil Rights Act. Alternatively, they assert that if exhaustion is sometimes required, this is not a proper case for the imposition of such a requirement.[4]

Plaintiffs rely on five decisions of the United States Supreme Court. They first cite Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), to the effect that: "The federal remedy [under the Civil Rights Act] is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Id. at 183, 81 S.Ct. at 482. However, the only state remedy available to the plaintiffs in Monroe was a judicial one. Long before Monroe, the rule was established that state judicial remedies normally need not be exhausted before relief is sought in the federal courts whether un-

der the Civil Rights Act or otherwise. Bacon v. Rutland Railroad Co., 232 U.S. 134, 34 S.Ct. 283, 58 L.Ed. 538 (1914). See also 1 Barron & Holtzoff (Wright ed.) § 65, pp. 355–56. Thus we find Monroe unpersuasive in the instant case where plaintiffs' remedy is plainly administrative.

In our opinion, plaintiffs' reliance upon McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), is misplaced for much the same reason. While the remedy in McNeese was formally administrative, the Court found that it was in substance judicial since the only power of the administrator was to recommend the institution of state court proceedings. Under such circumstances, the Court stated: "It would be anomalous to conclude that such a remedy forecloses suit in the federal courts when the most it could produce is a state court action that would have no such effect. * * * Monroe v. Pape, supra." 373 U.S. at 675, 83 S.Ct. at 1437. Further, the Court indicated its doubt that the state remedy was "sufficiently adequate." Id., at 674, 83 S.Ct. 1433.

Administrative remedies were involved in the final three cases relied upon by plaintiffs. Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); and Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968). In each of these cases the Court held there was no requirement of exhaustion. However, each involved circumstances making it clearly distinguishable from the instant case.

In both Damico, which contains the broadest language relied upon by plaintiffs, and King, a state statute was challenged as unconstitutional on its face. In administrative law cases generally there is some lingering confusion as to whether exhaustion will be required when

---

4. Plaintiffs also assert that dismissal was improper for the reason that the Illinois statute violates the Social Security Act, 42 U.S.C. § 301 et seq. Plaintiffs' position in this respect has been considered

and rejected by the Supreme Court. Dandridge, supra, 397 U.S. at 476–483, 90 S.Ct. 1153. Further consideration is unnecessary here.

the constitutionality of a statute is challenged on its face rather than as applied. *See* Davis, Administrative Law Treatise, 1958, § 20.04; and Jaffe, Judicial Control of Administrative Action, pp. 438–40 (1965). However, the emerging rule would appear to be that since the administrative remedy cannot resolve the constitutional challenge, exhaustion will not be required unless the administrative action might make judicial determination of the constitutional question unnecessary. *See* Public Utilities Commission v. United States, 355 U.S. 534, 539–540, 78 S.Ct. 446, 2 L.Ed.2d 470 (1958).

*Damico* and *King* merely take this development one step further in the special area of Civil Rights Act cases. They hold that in such cases, exhaustion will not be required "where the constitutional challenge is sufficiently substantial * * * to require the convening of a three-judge court." *King, supra,* 392 U. S. at 312 n. 4, 88 S.Ct. at 2131.[5] Thus we take *Damico* and *King* to hold only that because of the special federal nature of actions under the Civil Rights Act, and because of the general inadequacy of administrative remedies to deal with substantial challenges based upon the unconstitutionality of a statute on its face, exhaustion should not be required in cases combining these elements. Any more liberal interpretation which plaintiffs might wish to draw from the broad language of *Damico* seems foreclosed by the narrow interpretation given that language by the Court in *King*.

Thus, *Damico* and *King* are inapposite here where the Illinois statutory provisions have been held constitutional on their face and where the sole challenge is to their application by defendants. In such a case, the administrative process normally has the power to remedy the alleged wrongs worked on plaintiffs by lower level administrators. Indeed, it exists specifically for that purpose.

The final case relied upon by plaintiffs, Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), is also inapposite. There the Court held that to require exhaustion would be "to demand a futile act" since the administrator to whom the plaintiff could have appealed had already taken the position that the challenged rules "were validly and correctly applied to petitioner [and] strictly enforced * * *." *Id.* at 640, 88 S.Ct. at 2120. *Houghton,* then, is no more than a particular application of the general rule that there is no requirement to exhaust inadequate administrative remedies. *See* Davis, Administrative Law Treatise, 1958, § 20.07.

In the instant case, however, as shall be developed, the administrative remedy available to plaintiffs was fully adequate to deal with the alleged misadministration of the Illinois statute.

In summary, we are unable to find a complete abrogation of the exhaustion requirement in Civil Rights Act cases in the decisions cited by plaintiffs. Rather, we find only a pattern of flexibility in imposing the exhaustion requirement in this special area. Because of the important federal aspects of Civil Rights Act cases, the requirement may be more easily dispensed with in particular cases. This does not indicate, however, that it may be completely ignored.[6]

▇ We turn then to the question of whether this is a proper case for dispensing with the exhaustion requirement. This is not a case like *Damico* or *King* where, because the statute is attacked on its face, it is unlikely that the administrative process will contribute anything to the resolution of the challenge. Here the only challenge is to the

---

5. The Court cited *Damico* as direct support for this proposition. Apparently finding them different, the Court cited *McNeese* and *Monroe* with the signal "*See also.*"

6. The Second Circuit Court of Appeals has recently dealt with the cases cited by plaintiffs and has reached the same result as we do here. Eisen v. Eastman, 421 F.2d 560, 567–569 (2d Cir. 1969) cert. den., 400 U.S. 841, 91 S.Ct. 82, 27 L.Ed.2d 75 (1970).

administration of the statute. In such a case the exhaustion requirement serves an obvious and sensible purpose. As the district court aptly said: "Before a federal court takes the drastic measure of assuming supervision over a major state administrative program, the plaintiff must present a record sufficient to show that the manner in which that program is administered violates her constitutional rights. * * * This court cannot rule that a statute is unconstitutionally administered when the plaintiff herself has not explored the available avenues of administration, and she merely speculates that the entire system is arbitrary." [7]

Plaintiffs, however, argue that when they first brought this action before the three judge court, it met the requirements of *King* and *Damico* and that that is sufficient to dispense with exhaustion. Any other result, they contend, would be unfair because of the delay involved in their unsuccessful suit before the three judge court. We cannot agree.

■ The sole question before the three judge court was the constitutionality of the statute on its face and exhaustion was inappropriate. However, after its decision, the sole question was the constitutionality as applied and exhaustion became appropriate. It was at this point that the exhaustion requirement arose. We perceive no unfairness in this. Plaintiffs came before the three judge court without first exhausting their state remedies as they had a right to do. However, their unsuccessful attack of the statute on its face may not now be pleaded as an excuse for dispensing with customary exhaustion requirements. Any delay resulting from the unsuccessful three judge proceedings

must be laid to plaintiffs' decision to pursue the course they did.

■ This is also not a case like *McNeese* or *Houghton* where the state remedy is patently inadequate or futile. As interpreted by the three judge court, the Illinois statute requires shelter allowance exceptions whenever necessary to "provide a livelihood compatible with health and well-being." It permits appeals from decisions "* * * granting aid in an amount which is deemed inadequate." Ill.Rev.Stat.1967, ch. 23, § 11–8.[8] The appeal may be taken within 60 days after a decision is rendered, or if the department fails to act promptly on an application, 30 days after it is filed. Ill. Rev.Stat.1967, ch. 23, § 11–8. An appealed decision must be reviewed and the appellant is entitled to appear in person, to be represented by counsel, and to present all relevant matter in support of the claim. Ill.Rev.Stat.1967, ch. 23, § 11–8.1. Generally, a decision must be rendered within 60 days of the filing of the appeal. Ill.Rev.Stat.1967, ch. 23, § 11–8.6. Judicial review of adverse administrative action is available. Ill.Rev.Stat. 1967, ch. 110, § 264 *et seq.* On its face, this appears to be a fully adequate remedy for the alleged wrongs charged by plaintiff.

But plaintiffs say the administrative remedy in practice is inadequate. They contend that it is futile to appeal to defendants because defendants know the current system is bad and refuse to change it. However, as previously pointed out, on its face the system is not "bad" even by plaintiffs' criteria. It provides for granting exceptions whenever necessary to "provide a livelihood compatible with health and well-being." The alleged problems in obtaining exceptions exist

---

7. In *Eisen, supra,* 421 F.2d at 568, the Second Circuit expressed a similar concern:
"[T]he consequences of compelling federal courts to pass upon all complaints of unconstitutional acts by state and local officials at the lowest level, without any requirement of appeal to higher ones, would be so destructive of prop-er concepts of federalism and so needlessly burdensome to the federal courts * * *." (Footnote omitted.)

8. We cannot agree with plaintiffs' suggestion that this provision does not authorize an appeal from a decision denying a request for an exception to the shelter allowance maximum.

not because the current system is intrinsically unsatisfactory but only because it is allegedly administered in an unsatisfactory manner. While the administrative process might be inadequate to change the system, it is not inadequate to correct particular abuses within the system.

■ Plaintiffs further contend that the administrative remedy is inadequate because it can deal with the alleged wrongs only on a case by case basis and cannot afford efficient relief to the large class of plaintiffs. They contend that unending delays would result if this large class of plaintiffs were required to exhaust the administrative process before suit could be brought in federal court. But there is no such requirement. The complaint was dismissed only because the representative plaintiff had failed to exhaust her administrative remedy—not because the entire class had so failed. The purposes to be served by exhaustion would be served if the plaintiff before the court had first sought relief from the administrative process. No more than this was required and spectres of administrative chaos are out of place.

Thus, it is our conclusion that this is not a proper case in which to make an exception to the usual exhaustion requirements. The district court therefore properly dismissed Count II of the complaint for failure to exhaust an available and adequate state administrative remedy.

We further agree with the district court that plaintiffs have failed to state a cause of action. All of the alleged faults cited by plaintiffs as depriving them of federal rights are either correctable through the unexplored avenues of administrative appeal provided by the Illinois statute or are plainly frivolous.

Thus plaintiffs contend that the number of exceptions is plainly insufficient to meet the need. But it is uncontroverted that the number of exceptions is and has been increased periodically as the reserve of exceptions is depleted and that such reserve was not depleted when this action was commenced.

■ Plaintiffs next say that the reserve remains undepleted only because exceptions are given only upon request and that qualified families often are not aware of their right to an exception. Plaintiffs urge that "surely a federal court can require those officials to take affirmative action to protect those rights" by requiring that exceptions be given "automatically" to qualified families. Plaintiffs cite no authority for this proposition. Nor do they allege that defendants are guilty of any bad faith nor that they purposefully discriminate against some public assistance families by keeping secret the existence of exceptions. Apparently all they claim is that the defendants have failed to search their records for families who might qualify for exceptions and to give such families exceptions they have not requested. We are not prepared to say that the federal Constitution requires this.

Plaintiffs further claim that notwithstanding the requirements of the statute, there are often long delays before there is action upon an application for an exception. However, plaintiffs do not allege that they have attempted to pursue the remedy specifically provided for such delay by filing an appeal after 30 days of inaction. Nor is there any allegation indicating that such remedy is in any way inadequate or futile.

Similarly, plaintiffs allege that exceptions are denied for frivolous or improper reasons. But, once again, these alleged improper decisions are appealable under the Illinois statute and plaintiffs will not be heard to say that the administration of the statute is arbitrary when there has been no real effort to work within the statutory scheme.

■ Finally, plaintiffs complain of the administrative practice whereby special procedures are required to obtain an "exceptional exception" of over $135. Plaintiffs urge that this practice is arbitrary in that the exception is denied *in toto* pending the special procedures

rather than being granted in the amount of $135 with the balance only subject to the special procedures. Plaintiffs' suggestion would require two determinations of eligibility rather than one. This alone provides a rational basis for the method now followed. No more is required. *Dandridge, supra,* 397 U.S. at 484–486, 90 S.Ct. 1153, 25 L.Ed.2d 491.

Thus, it was also proper to dismiss Count II for failure to state a cause of action.

Counts I and III were properly dismissed for the reasons given by the trial court.

Accordingly, the decision of the trial court is affirmed in all respects.

Affirmed.

REYNOLDS, District Judge (dissenting).

This is a class action welfare suit brought under the Civil Rights Act, 42 U.S.C. § 1983 and 28 U.S.C. § 1343. The members of the class all pay more for shelter than they receive for that purpose in their public assistance grants and contend that the cause of this situation is that certain Illinois public assistance provisions are unconstitutionally applied to them by the defendants.

Plaintiffs originally began this lawsuit in July of 1968. This appeal is from the lower court's dismissal of their amended complaint, which amendment was filed after the case was remanded to the single district judge by the three-judge court. The majority affirms the holding of the lower court that the plaintiffs are in the wrong forum—that they must exhaust their state administrative remedies.

I dissent. I believe that the district court erred in granting the motion to dismiss.[1] Exhaustion of state administra-

---

1. At the outset, I have serious doubts about the *power* of the district court to have *dismissed the amended complaint* in this case. If it is claimed that a statute or regulation of state-wide applicability is unconstitutional, as applied to plaintiffs, three judges are required if the claim is coupled with a demand for injunctive relief. Turner v. Fouche, 396 U.S. 346, 353 n. 10, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970); Wright, The Law of Federal Courts (1970 ed.), p. 190 and cases cited therein.

The lower court does not appear to have regarded the case as one requiring three judges, and it does not appear that the plaintiffs requested the convening of such a court. However, the majority herein clearly regards the plaintiffs' claim as an "as applied" constitutional attack.

The original three-judge court in this case stated that plaintiffs were attacking the statute on its face and as applied. However, in footnote 1 of their opinion, the three judges note that the original complaint failed to make the requisite demand for a declaration of unconstitutionality and injunctive relief on that ground and state that this defect would have to be resolved on remand to the single judge. On remand, the plaintiffs filed an amended complaint, Count II of which begins as follows:

"1. This Count seeks a declaratory judgment of the unconstitutionality of the action of defendants in applying and administering the shelter allowances provision of the Illinois Public Aid Code, Ch. 23, secs. 12–4.11, 12–14, Ill.Rev. Stat., 1967, and a preliminary and permanent injunction against the continued application and administration of these provisions in this manner."

There is the further ambiguity involved in accurately ascertaining the precise ground on which the lower court dismissed the plaintiffs' amended complaint. The court stated that Count II was to be dismissed because of plaintiffs' failure to exhaust. However, it also stated that plaintiffs' constitutional allegations did not "approach constitutional dimensions which would justify the assumption of jurisdiction by this court absent exhaustion of available state administrative remedies." The majority herein notes this ground of dismissal but also later refers to the dismissal as being for failure to state a cause of action, page 1358 above. It is unclear to me whether the lower court was dismissing because the federal constitutional question was "insubstantial," which it clearly could do (Weintraub v. Hanrahan, 435 F.2d 461 (7th Cir. 1970)), or for some other reason inconsistent with the powers of a single judge in a case properly heard by three judges. As will be discussed below, I have considerable doubt as to whether or not the lower court may not have been

tive remedies is *not* required in an action properly brought under § 1983. I disagree with the majority's interpretation of Supreme Court decisions on this issue and believe that Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), controls this case. Further, I believe that the analytical distinction which appears to flow from the majority opinion relating the exhaustion requirement to the form of constitutional attack (*i. e.*, facial or as applied) to be in error. I also believe that this particular class action welfare suit is an improper case for requiring exhaustion of administrative remedies.

Exhaustion of state administrative remedies is *not* required before seeking vindication of one's constitutional rights in federal court in an action properly brought under § 1983. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); and Houghton v. Shafer, 392 U.S. 639, 88 S. Ct. 2119, 20 L.Ed.2d 1319 (1968).

Damico v. California, *supra,* was a public assistance case where the administrative remedies, as plaintiffs point out, were substantially identical to those in this case. In *Damico,* the Supreme Court stated that resort to those administrative remedies was not a prerequisite to beginning an action in federal court for relief under the Civil Rights Act. The *Damico* court stated:

" * * * The three-judge District Court dismissed the complaint solely because 'it appear[ed] to the Court that all of the plaintiffs [had] failed to exhaust *adequate* administrative remedies.' This was error. In McNeese v. Board of Education, 373 U.S. 668 [83 S.Ct. 1433, 10 L.Ed.2d 622], noting that one of the purposes under-

lying the Civil Rights Act was 'to provide a remedy in the federal courts supplementary to *any* remedy any State might have,' *id.,* at 672, [83 S.Ct. at 1435], we held that 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy,' *id.,* at 671 [83 S.Ct., at 1435]. See Monroe, v. Pape, 365 U.S. 167, 180–183 [81 S.Ct. 473, 5 L.Ed.2d 492]. * * *" *Id.* at 416– 417, 88 S.Ct. at 526. (Emphasis supplied.)

Later during the same term, the Supreme Court decided another public assistance case, King v. Smith, *supra.* After noting that the three-judge court below had "correctly adjudicated the merits of the controversy without requiring appellees to exhaust state administrative remedies," the Court stated:

"We reject appellants' argument that appellees were required to exhaust their administrative remedies prior to bringing this action. Pursuant to the requirement of the Social Security Act that States must grant AFDC applicants who are denied aid 'an opportunity for a fair hearing before the State agency,' 42 U.S.C. § 602(a) (4) (1964 ed., Supp. II), Alabama provides for administrative review of such denials. Alabama Manual for Administration of Public Assistance, pt. I, § II, pp. V–5 to V–12. Decisions of this Court, however, establish that a plaintiff in an action brought under the Civil Rights Act, 42 U.S.C. § 1983, 28 U.S.C. § 1343, is not required to exhaust administrative remedies, where the constitutional challenge is sufficiently substantial, as here, to require the convening of a three-judge court. Damico v. California, 389 U.S. 416 [88 S.Ct. 526, 19 L.Ed.2d 647] (1967). See also McNeese v. Board of Education, 373 U.S. 668, [83 S.Ct. 1433, 10 L.Ed.

of the view. that some type of higher constitutional standard of substantiality was required where exhaustion was a

factor—a view with which I disagree and believe to be in error.

2d 622] (1963); Monroe v. Pape, 365 U.S. 167, 180–183 [81 S.Ct. 473, 5 L. Ed.2d 492] (1961). \* \* \*" *Id.*, at n. 4, page 312, 88 S.Ct. page 2131.

Finally, in Houghton v. Shafer, *supra*, a § 1983 action brought by a state prisoner where the lower courts had dismissed the complaint for failure to exhaust state administrative remedies, the Court said, 392 U.S. at 640, 88 S.Ct. at 2120:

> "As we understand the submission of the Attorney General of Pennsylvania in this Court, the rules of the prison were validly and correctly applied to petitioner; these rules are further said to be strictly enforced throughout the entire correctional system in Pennsylvania. In light of this it seems likely that to require petitioner to appeal to the Deputy Commissioner of Correction, the Commissioner, or to the Attorney General would be to demand a futile act. *In any event, resort to these remedies is unnecessary in light of our decisions in* Monroe v. Pape, 365 U.S. 167, 180–183, [81 S.Ct. 473, 5 L.Ed.2d 492]; McNeese v. Board of Education, 373 U.S. 668, 671, [83 S.Ct. 1433, 10 L. Ed.2d 622]; and Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647. \* \* \*" (Emphasis supplied.)

The Court closed by saying that "[o]n the basis of these decisions," the lower court judgment was to be reversed and remanded.

The majority opinion herein, after analyzing the above Supreme Court cases, states:

> " \* \* \* we are unable to find a complete abrogation of the exhaustion requirement in Civil Rights Act cases in the decisions cited by plaintiffs. Rather, we find only a pattern of flexibility in imposing the exhaustion requirement in this special area. \* \*"

I am of the opinion that the Supreme Court cases on § 1983 exhaustion do not yield a "pattern of flexibility in imposing the exhaustion requirement," but, rather, yield the broad rule that exhaustion is *not* required in cases properly brought under the Civil Rights Act. However, it is not only the majority's above-quoted, broad statement about exhaustion that troubles me but also the analysis through which the majority appears to find a broad pattern of flexibility. The majority appears to formulate a novel dichotomy regarding the exhaustion of administrative remedies which is related to the form of the constitutional attack. The opinion of the majority seems to imply that exhaustion in a § 1983 case should be governed by the following rule: Exhaustion is *not* required where the remedies are judicial or where a statute or regulation is attacked *on its face* as unconstitutional; however, exhaustion *is* to be required where the remedies are administrative and the statute, regulation, etc., is attacked as unconstitutional *as applied.*

I believe that the above mechanical distinction regarding the exhaustion requirement is in error. Initially, I believe that the majority's as applied-facial attack distinction does not flow from the controlling decisions of the Supreme Court on § 1983 exhaustion requirements. I believe the majority's interpretation of those cases to be in error. However, even the majority's interpretation does not appear to me to furnish any support for the as applied-facial attack distinction.

As indicated above, I believe that Damico v. California, *supra*, stands for the proposition that exhaustion of administrative remedies is *not* a prerequisite to federal court suit under § 1983. I believe that the *Damico* case alone controls decision of this issue in this case because of the similarity of *Damico* to the instant case. However, the majority reads *Damico* as having been "narrowed" and "limited" by the subsequent decision of King v. Smith. The majority apparently places great importance on the phrase in *King* where the Court stated that plaintiffs in a § 1983 action were not required to exhaust administrative remedies "where the constitutional challenge is sufficiently substantial, as here,

to require the convening of a three-judge court." (Citing *Damico, McNeese,* and *Monroe.*) Thus, the majority states:

> " * * * Thus we take *Damico* and *King* to hold only that because of the special federal nature of actions under the Civil Rights Act, and because of the general inadequacy of administrative remedies to deal with substantial challenges based upon the unconstitutionality of a statute on its face, exhaustion should not be required in cases combining these elements. *Any more liberal interpretation which plaintiffs might wish to draw from the broad language of Damico seems foreclosed by the narrow interpretation given that language by the Court in King.*

> "Thus, *Damico* and *King* are inapposite here where the Illinois statutory provisions have been held constitutional on their face and where the sole challenge is to their application by defendants. * * * " See page 1356 above. (Emphasis supplied.)

I do not understand how *King* can reasonably be interpreted as narrowing or limiting *Damico*. I do not believe that the *King* court can reasonably be read as having held that the broad no-exhaustion policy summarized and enunciated in *Damico* is limited to three-judge court cases.[2] However, even assuming such an interpretation of *King* arguendo (although I believe it untenable), the majority's as applied-facial attack dichotomy still does not follow. Assuming

that certain three-judge court cases could be "as applied" cases,[3] exhaustion would not be required in many as applied cases. If a plaintiff attacked a statute of statewide applicability as being unconstitutional *as applied* and sought injunctive relief restraining the operation and enforcement of the statute, a three-judge court would be required,[4] and, hence, even under the assumed interpretation of *King* in question, exhaustion of administration remedies would *not* be necessary. Hence, even the above unrealistically narrow interpretation of *King*, limiting *Damico* to three-judge courts, does not seem to furnish support for the majority's as applied-facial attack distinction.

I do not believe that anything contained in the recent Supreme Court cases on exhaustion requirements in § 1983 cases furnishes a ground for the majority's as applied-facial attack distinction either explicitly or implicitly.

A further rationale which apparently underlies the majority's as applied-facial attack formulation appears to be related to the "adequacy" of the administrative remedies in as applied cases. The majority implies that where the attack is as applied, the administrative remedies are "fully adequate" remedies for plaintiffs' grievances. I do not understand how the form of the constitutional attack can be seen as automatically dictating the adequacy of the administrative remedies in this or any other case.

---

2. See Hall v. Garson, 430 F.2d 430, 436 n. 9 (5th Cir. 1970). I submit that such an interpretation of *Damico* and *King* would be unrealistically mechanical and would make little practical sense. Reading *Damico* as limited only to three-judge court cases under § 1983 would mean, for example, that the exhaustion requirement could conceivably hinge on whether or not the plaintiff requests only declaratory relief or both declaratory and injunctive relief. (Since assuming an attack upon a statute of state-wide applicability, the former claim would not require a court of three judges, whereas the latter would require a court of three judges.)

Likewise, the exhaustion requirement could turn on whether a constitutional challenge was made to a statute of statewide applicability or merely to a local ordinance or statute of limited applicability. Two of the three cases cited by the Court in *King*, *McNeese*, and *Monroe* did not involve three-judge courts. In *Houghton, supra,* decided the same day as *King,* the judgment below was reversed for having required exhaustion of administrative remedies in a non-three-judge court case.

3. See n. 1, *supra,* this dissenting opinion.

4. *Ibid.*

I believe *Damico* stands for the proposition that courts need not undertake a determination as to the "adequacy" of the state remedies. In *Damico*, although the remedies were stated to be "adequate," exhaustion of administrative remedies was not required. Hence, requiring exhaustion on the basis of the "adequacy" of the state administrative remedies misses, in my view, the central thrust of *Damico* which was that "one of the purposes underlying the Civil Rights Act was 'to provide a remedy in the federal courts supplementary to *any* remedy any State might have.'" *Damico, supra,* 389 U.S. at 416–417, 88 S.Ct. at 526. (Emphasis supplied.)

However, if any distinction regarding the form of the action and the adequacy of the state remedies is to be attempted (which, as indicated above, I think is unnecessary), I would submit that a more logical and practical distinction would be in terms of whether the action involves an individual grievance or the constitutional claims of a class of individuals.

In my view, administrative remedies are always inadequate, in one aspect, where plaintiffs present constitutional challenges. That is, the administrative agency cannot properly be the arbiter of constitutional disputes because this is a judicial question. Where a statute or regulation is attacked as being unconstitutional on its face, the agency cannot resolve that constitutional dispute. This is conceded by the majority herein. However, just as the agency cannot properly resolve a constitutional challenge to the *face* of a regulation or statute, neither can they, in my view, resolve the constitutional dispute surrounding a claim that a regulation or statute is unconstitutional *as applied.*

However, where an individual is involved, there is a potential for resolving the dispute without the necessity of deciding constitutional issues. That is, assuming the desire on the part of the agency to do so, the agency can simply grant the claim or grievance which underlies the constitutional challenge. In an instance involving one plaintiff in a dispute with a low level administrator, such a procedure might lead to the avoidance of a decision on a constitutional issue.

However, where class allegations of unconstitutionality are at issue, I submit that administrative remedies are always inadequate. In the instant case, the majority would have the named plaintiff exhaust her administrative remedies. This exhaustion requirement in this case appears to stem from the fact that the named plaintiff, on behalf of herself and many, many others, challenges the unconstitutionality of the statutes *as applied.* I fail to see how this makes a difference. How does the named plaintiff exhausting her administrative remedies resolve the constitutional claims of the class? [5] The constitutional claims of the class cannot be resolved by requiring the named plaintiff to exhaust whether the constitutional claims are facial or as applied. Just as the agency in a welfare fair hearing cannot adjudicate the facial validity of a statute or regulation, neither can they properly adjudicate the constitutionality of a pattern of application of the statute or regulation to a class of plaintiffs. In both instances I submit that the administrative remedies are *in*adequate.

Hence, with regard to the "adequacy" of the state administrative remedy, I am of the opinion that, first, recent Supreme Court cases indicate that exhaustion in § 1983 cases does not turn on the

---

5. " * * * if the plaintiff is required to proceed first through the state agency, there is a danger that the agency proceedings will terminate in an individual settlement which satisfies the complaint, but neither changes the rule nor subjects it to external scrutiny. Where this happens, others who, because of fear, ignorance, or lack of resources, fail to mount challenges of their own, continue to be governed by a rule of questionable constitutionality." Note, Exhaustion of State Remedies Under the Civil Rights Act, 68 Columbia L.Rev. 1201, 1208 (1968).

adequacy of the state remedy;[6] and, second, in any event, the majority's attempt to relate "adequacy" of the administrative remedy to the form of the constitutional attack advanced under § 1983 is in error.[7]

In addition to the conceptual disagreements I have regarding the majority's as applied-facial attack distinction, I also have some misgivings about the practical application of such a distinction in general and in the context of this case. The majority states:

"The sole question before the three judge court was the constitutionality of the statute on its face and exhaustion was inappropriate. However, after its decision, the sole question was the constitutionality as applied and exhaustion became appropriate. *It was at this point that the exhaustion requirement arose.* \* \* \*" (Emphasis supplied.)

It is common in my experience for a court, when faced with both facial and as applied constitutional challenges, to pass upon the facial allegations first. In such a case, the procedure outlined by the majority would mean that the exhaustion requirement could often "arise" in the middle of an ongoing lawsuit (after the Court had considered the facial validity issue) with the result that plaintiffs could find themselves out of court after considerable expenditure of time and resources. I believe that the potential unfairness of this procedure whereby the exhaustion requirement "arises" when the court turns to the "as applied issue" is illustrated in the instant suit. Plaintiffs' claims relate directly to money in budgets utilized to attempt to sustain what are at best subsistence levels of existence. Their claims relate to matters that are immediate and crucial. After two and one-half years, plaintiffs are now told, in effect, to start all over again and to exhaust their administrative remedies before their claim under the Civil Rights Act will be considered any further by federal courts.

I would add one further note regarding the actual adequacy of the administrative remedies in this particular case. None of the plaintiffs was told that they must exhaust when they originally began this lawsuit. Now the named plaintiff must exhaust. However, I believe that it is now exceedingly doubtful that she will be permitted to exhaust.[8] Chapter 23, § 11–8, Ill.Rev.Stat., 1967, noted in the majority opinion above, states that an appeal from an adverse decision by the agency may be taken "within 60 days." Since plaintiff's adverse decision on her request for a shelter exemption was in 1968, I think it highly probable that an appeal is no longer permissible under the above provision governing agency appeals.

---

6. For a discussion of some of the difficulties potentially inherent in the adequacy of the state remedy approach, such as when precisely a state remedy is to be deemed adequate, see Chevigny, Section 1983 Jurisdiction: A Reply, 83 Harv.L. Rev. 1352 (1970).

7. At n. 5 above, the majority implies that the Second Circuit in the case of Eisen v. Eastman, 421 F.2d 560 (2d Cir. 1969), reached the same result in dealing with this problem. *Eisen* was not a welfare suit and it was not a class action. In his analysis of *King* and *Damico*, Judge Friendly stated that it was difficult to see what resort to state fair hearings could have accomplished and referred in that regard to a well known article dealing with federal judicial review of state welfare practices wherein the author discusses the practical inadequacy of state administrative remedies in welfare cases. Note, Federal Judicial Review of State Welfare Practices, 67 Columbia L.Rev. 84, 103–106, cited at p. 569 in *Eisen, supra.* [See also pages 92–96 in the Note.] *Eisen* did not articulate a rule of exhaustion related to whether the constitutional attack was facial or as applied.

8. I assume that the only "remedy" the plaintiff must exhaust under the mandate of the majority opinion is her welfare "fair hearing" since the majority concedes that *judicial* remedies need not be exhausted under § 1983. (In this connection I do not understand the majority opinion including judicial review of the agency appeal as one of the remedies open to plaintiff in this case.)

In sum, I do not believe that plaintiffs in this case should be required to exhaust their administrative remedies any further at this time. I therefore dissent from the majority position affirming the lower court dismissal on this ground.

The majority states at page 1355 above that the lower court dismissed plaintiffs' complaint for failure to exhaust available state administrative remedies *and* because the complaint "stated no 'substantial constitutional claim [to] * * justify the assumption of jurisdiction * * * absent exhaustion of available state administrative remedies.'" As indicated earlier,[9] I believe that the lower court opinion indicates that the court may have read the language from King v. Smith as requiring some higher standard of substantiality for constitutional claims under § 1983 where exhaustion of administrative remedies is not required. To the extent that such an interpretation of King v. Smith was involved in the dismissal of this complaint, I disagree. I do not believe that by referring to the standard of substantiality in three-judge court cases, the *King* court was establishing thereby a *higher* standard for § 1983 cases in which exhaustion had not been accomplished by the plaintiffs. I do not understand the standard of substantiality of the constitutional claim in a potential three-judge court case to be any higher than that required *for a single judge* § 1983 action. The constitutional claim in a three-judge court case must not be "insubstantial." Utica Mutual Insurance Co. v. Vincent, 375 F.2d 129 (2d Cir. 1967). "The lack of substantiality in a federal question may appear either because it is obviously without merit or because its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject." California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 867, 82 L.Ed. 1323 (1938). Just as an "insubstantial" federal constitutional claim will not properly found jurisdiction in a case required by its nature to be heard by a court of three judges, neither will the same constitutional claim found jurisdiction in a case properly heard by a single judge. Hence, I do not believe that the language from *King* adverting to the substantiality of the constitutional claim in a three-judge court case can be read as establishing a new, higher standard of substantiality for the constitutional claim in a single judge § 1983 case before the exhaustion of administrative remedies requirement will be waived. To the extent such an interpretation of *King* underlies the dismissal of the complaint herein, I disagree.

The majority herein, however, also typifies the dismissal of the complaint below as being based upon the plaintiffs' failure to state a claim.[10] "[T]he accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

I am of the opinion that it is insufficiently clear on the present record that plaintiffs cannot prove a set of facts entitling them to relief to warrant dismissal of the complaint on this basis. I would have denied the motion to dismiss and required the defendants to answer.

9. See note 1, *supra*, this dissenting opinion.

10. See page 1358 above.