**UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW), by Robert Johnston, Regional Director, for itself and on behalf of certain members and employees, et al., Plaintiffs,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants.**

No. 71 C 1277.

United States District Court, N. D. Illinois, E. D.

Sept. 20, 1972.

Katz & Friedman, Chicago, Ill., Stephen I. Schlossberg, Detroit, Mich., for plaintiffs.

Irwin I. Zatz and John Bolton, Jr., of Arvey, Hodes & Mantynband, Stephen A. Milwid, John G. Smith and R. R. McMahan of Lord, Bissell & Brook, Joseph Keig, Jr., of Price, Cushman, Keck & Mahin, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on certain defendants' motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

Plaintiff United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") is a labor organization composed of over 1.5 million workers. Plaintiffs Porter, Watkins and Wright are black motorists who reside in the City of Chicago in an area which will hereinafter be referred to as Area 43. Plaintiffs Moscovitch and Carter are white motorists who reside in Area 43. Defendants, except for the Insurance Rating Board ("IRB"), are insurance companies doing business in Illinois. Defendant IRB, now doing business as the Insurance Services Office ("ISO"),[1] is an advisory organization which provides insurance carriers with statistical, actuarial, rating, policy form and related services with respect to various lines of insurance, including automobile insurance.

Plaintiffs base federal jurisdiction over the instant case upon various sections of the post-Civil War civil rights legislation—specifically, 42 U.S.C. §§ 1981–1983. The complaint alleges that in March of 1970, the defendants divided the City of Chicago into four zones for the purpose of setting new automobile insurance premium rates. One of the zones thus created, plaintiffs allege, was that area of Chicago bounded on the north by Chicago Avenue, on the south

---

1. IRB, an unincorporated association of insurers, was merged into ISO on January 1, 1971. ISO succeeded IRB as a licensed rating and advisory organization in Illinois on April 1, 1971.

by 95th Street, on the east by Lake Michigan and on the west by Ashland Avenue and certain other streets west of Ashland Avenue. This is the area which has been referred to as Area 43. The complaint alleges that at the time Area 43 was created, and at all times thereafter, the defendants knew that Area 43 encompassed approximately 85% of the black population in Chicago. The complaint further alleges:

> In so establishing Area 43 the defendants isolated or segregated the bulk of the Negro population of Chicago and established for those persons substantially higher automobile insurance rates, thereby discriminating against and depriving these persons of equal opportunity to contract for automobile insurance.

The primary reason urged by defendants for dismissing the instant suit is the alleged failure of plaintiffs to exhaust their state administrative remedies. Whether this proffered reason is valid depends upon the resolution of two separate issues: (1) Are plaintiffs in a civil rights suit required to exhaust remedies, and (2) if so, are adequate state administrative remedies available to plaintiffs in the instant case? Each of these issues will be discussed separately.

## I. ARE PLAINTIFFS IN A CIVIL RIGHTS SUIT REQUIRED TO EXHAUST STATE REMEDIES?

In Monroe v. Pape, 365 U.S. 167, 169, 81 S.Ct. 473, 474, 5 L.Ed.2d 492 (1961), the complaint alleged that:

> . . . 13 Chicago police officers broke into petitioners' home in the early morning, routed them from bed, made them stand naked in the living room, and ransacked every room, emptying drawers and ripping mattress covers. It further alleg[ed] that Mr. Monroe was then taken to the police station and detained on 'open' charges for 10 hours, while he was interrogated about a two-day-old murder, that he was not taken before a magistrate, though one was accessible, that he was not permitted to call his family or attorney, that he was subsequently released without criminal charges being preferred against him.

The complaint further alleged that the officers, who did not have a valid search warrant, acted "under color of the statutes, ordinances, regulations, customs and usages" of Illinois. When the defense of plaintiffs' failure to exhaust state remedies was raised, the Court stated:

> It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked. Hence the fact that Illinois by its constitution and laws outlaws unreasonable searches and seizures is no barrier to the present suit in the federal court. *Id.* at 183, 81 S.Ct. at 482.

In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963), the complaint alleged that the defendant school board required black students to attend classes in a segregated part of the school and use entrances and exits separate from the whites'. The lower court, dismissing the action, held that the administrative remedy provided by the Illinois statute must first be exhausted. The state statute provided that 50 residents of a school district or 10%, whichever is less, could file a complaint with the Superintendent of Public Instruction alleging that a pupil had been discriminated against in a school on account of race. The Superintendent, on notice to the school board, could then put the complaint down for a hearing within a prescribed time. After the hearing, the Superintendent would notify the parties of his decision and, if he decided that the allegations in the complaint were "substantially correct," would request the Illinois Attorney General to bring suit to rectify the practice.

The Court, in reversing an affirmance of the dismissal, stated:

We have, however, in the present case no underlying issue of state law controlling this litigation. The right alleged is as plainly federal in origin and nature as those vindicated in Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873

. . ..

\* \* \* \* \* \*

It is immaterial whether respondents' conduct is legal or illegal as a matter of state law. . . . Such claims are entitled to be adjudicated in the federal courts. *Id.* at 674, 83 S.Ct. at 1437 [footnotes omitted].

In Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967), welfare claimants under California's welfare code sought a declaratory judgment of unconstitutionality against certain of the code's sections and regulations. The three-judge District Court dismissed the complaint solely because "it appear[ed] to the Court that all of the plaintiffs [had] failed to exhaust adequate administrative remedies." The Court, in reversing, stated:

This was error. In McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622, noting that one of the purposes underlying the Civil Rights Act was 'to provide a remedy in the federal courts supplementary to any remedy any State might have,' . . . we held that 'relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided [an administrative] remedy,' . . ..
*Id.* at 417, 88 S.Ct. at 526.

Plaintiffs urge that the three cases cited hereinabove, *inter alia*, clearly demonstrate that there is no requirement of exhaustion of remedies in suits brought under the Civil Rights Acts. Accordingly, plaintiffs argue, this case should neither be stayed nor dismissed.

Defendants, however, have presented case authority in support of their motion. In Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), a three-judge District Court enjoined the enforcement of certain of Alaska's fishing licensing laws. In reversing, the Court, quoting from City of Meridian v. Southern Bell Tel. & Tel. Co., 358 U.S. 639, 640–641, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959), stated:

Proper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided in the state tribunals preliminary to a federal court's consideration of the underlying federal constitutional questions. \* \* \* That is especially desirable where the questions of state law are enmeshed with federal questions. \* \* \* Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty—certainly for a federal court. \* \* \* In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily. 397 U.S. at 85, 90 S.Ct. at 789–790.

In Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), a class action was brought challenging the constitutionality of Florida's "Millage Rollback Law". This law provided that a local school district must limit its *ad valorem* taxes for school purposes to not more than 10 mills of assessed valuation, with certain exceptions, in order to receive state moneys. The plaintiffs claimed the law effected an invidious discrimination in violation of the Equal Protection Clause since it discriminated against school children in property-poor counties. A three-judge District Court enjoined enforcement of the law.

Reversing the lower court's decision, the Court stated:

The District Court . . . rejected appellants' argument that the court 'should abstain from considering the

case in deference to [the] state court proceeding,' . . . holding that under Monroe v. Pape, [*supra*] and McNeese v. Board of Education, [*supra*], '[t]he fact that a state remedy is available is not a valid basis for federal court abstention.' . . . The reliance upon Monroe v. Pape and *McNeese* was misplaced. Monroe v. Pape is not in point, for there 'the state remedy, though adequate in theory, was not available in practice.' . . . McNeese held that 'assertion of a federal claim in a federal court [need not] await an attempt to vindicate *the same claim* in a state court.' . . . Our understanding from the colloquy on oral argument with counsel for the parties is that the [state court proceeding] asserts, not the 'same claim,' that is, the federal claim of alleged denial of the federal right of equal protection, but primarily state law claims under the Florida Constitution, which claims, if sustained, will obviate the necessity of determining the Fourteenth Amendment question. 401 U.S. at 478, 91 S. Ct. 856 at 857–858.

In Metcalf v. Swank, 444 F.2d 1353 (7th Cir. 1971), Judge Pell entered a well-reasoned opinion discussing the abstention doctrine in light of the recent Supreme Court decisions. In *Metcalf*, welfare recipients brought a class action challenging the constitutionality of a ceiling on the public assistance shelter allowances. The District Court dismissed the cause since the plaintiffs had failed to exhaust their state remedies. In affirming, the Court of Appeals distinguished a number of Supreme Court decisions. Monroe v. Pape, *supra*, was distinguished on the ground that:

. . . the only state remedy available to the plaintiffs in *Monroe* was a judicial one. Long before *Monroe*, the rule was established that state judicial remedies normally need not be exhausted before relief is sought in the federal courts whether under the Civil

Rights Act or otherwise. . . . Thus we find *Monroe* unpersuasive in the instant case where plaintiffs' remedy is plainly administrative. 444 F. 2d 1355.

Similarly, the Court of Appeals distinguished McNeese v. Board of Education, *supra*, stating:

While the remedy in *McNeese* was formally administrative, the Court found that it was in substance judicial since the only power of the administrator was to recommend the institution of state court proceedings. . . . Further, the Court indicated its doubt that the state remedy was 'sufficiently adequate.' 444 F.2d at 1355.

King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) and Damico v. California, *supra*, were distinguished thusly:

In both *Damico*, which contains the broadest language relied upon by plaintiffs, and *King*, a state statute was challenged as unconstitutional on its face.

\* \* \* \* \* \*

Thus we take *Damico* and *King* to hold only that because of the special federal nature of actions under the Civil Rights Act, and because of the general inadequacy of administrative remedies to deal with substantial challenges based upon the unconstitutionality of a statute on its face, exhaustion should not be required in cases combining these elements. 444 F.2d at 1355–1356.

Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968), was distinguished as being merely "a particular application of the general rule that there is no requirement to exhaust inadequate administrative remedies."

In Reid v. Board of Education, 453 F. 2d 238 (2nd Cir. 1971), a class composed of handicapped children sued a school board for its failure to screen and admit them to a special education program. The Court, holding that the action must

be stayed while the plaintiffs attempted to exhaust their administrative remedies, stated:

> In holding that appellants must resort to the New York courts for initial resolution of available state claims, we have fully considered Monroe v. Pape, [*supra*] and McNeese v. Board of Education, *supra,* which held that § 1983 provides a supplementary remedy and that 'assertion of a federal claim in a federal court [need not] await an attempt to vindicate the same claim in a state court.' . . . But, the state law claims of appellants here are separate and distinct from the rights asserted as a basis for their federal claims. This is not a case where the state claims, although not based upon a state remedy for a federally-provided right, are grounded upon state constitutional rights which are merely counter-parts for the federal rights asserted. 453 F.2d 244.

From these authorities, the Court will attempt to distill some rules governing the application of the doctrine of abstention to suits brought under the Civil Rights Acts.

■ First, it is apparent that where a statute is being challenged as unconstitutional on its face, a plaintiff is not required to exhaust his administrative remedies. The rationale for this rule appears to be that such exhaustion would usually be futile.

■ Second, if the state action available to plaintiff is based upon claims which are identical or counter-parts to his federal claims, the plaintiff need not exhaust his state remedies. The rationale for this rule is that the federal cause is supplementary to any identical state cause.

■■ Third, a plaintiff, even if he does not challenge the constitutionality of a statute on its face, will not be required to exhaust his remedies if such remedies are judicial and not administrative in nature. The rationale for this rule is that while a state administrative decision can provide a record and a basis for a judicial decision, a state judicial decision can provide no more of a record or basis than a federal court's decision could provide.[2]

■ By combining these rules into one rule and then taking the obverse of the single rule, the Court comes up with the following: Where a plaintiff (1) is not challenging the constitutionality of a statute on its face, (2) can challenge the complained-of activity in a state proceeding on a basis different in nature than his basis in a federal court, and (3) has adequate administrative, not judicial, remedies available, he will be required to exhaust his state remedies before proceeding in a federal court. This rule fits like a glove on the instant suit.

■ Various sections of the Illinois Insurance Code of 1937, Ill.Rev.Stat. ch. 73, §§ 613–1065.163, should be set out at this time. Ill.Rev.Stat. ch. 73, § 1065.-18–4(d) sets forth standards to be used in setting rates:

> Risks may be grouped by classifications for the establishment of rates and minimum premiums. . . . Such classifications . . . of risks may be established based upon size, expense, management, individual experience, location or dispersion of hazard, or any other reasonable considerations

---

2. In Metcalf v. Swank, 305 F.Supp. 785, 789 (N.D.Ill.1969), *aff'd,* 444 F.2d 1353 (7th Cir. 1971), the Court stated:

  Before a federal court takes the drastic measure of assuming supervision over a major state administrative program, the plaintiff must present a record sufficient to show that the manner in which that program is administered violates her constitutional rights. . . . This court cannot rule that a statute is unconstitutionally administered when the plaintiff herself has not explored the available avenues of administration, and she merely speculates that the entire system is arbitrary.

and shall apply to all risks under the same or substantially the same circumstances or conditions.

Ill.Rev.Stat. ch. 73, § 1031(3) provides that the following activity by an insurance carrier is an unfair method of competition:

> [The] [m]aking or permitting [of] any unfair discrimination between individuals or risks of the same class or of essentially the same hazard and expense element because of the race, color, religion or national origin of such insurance risks or applicants.

Plaintiffs do not allege that these sections are unconstitutional on their face; further, it is obvious from an examination of these sections that any such allegation, if made, would be frivolous.

It should also be obvious from an examination of these sections that the basis for a challenge of the complained-of activity in a state proceeding would be entirely different than the basis for a challenge in a federal court. As stated in Monroe v. Pape, *supra*, Congress, by enacting the Civil Rights Acts, intended:

> . . . to afford a federal right in federal courts because, by reason of prejudice, passion, neglect, intolerance or otherwise, state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by the state agencies. 365 U.S. at 180, 81 S.Ct. at 480.

However, the provision in the Illinois Insurance Code of 1937 which prohibits racial discrimination in the setting of insurance rates is not primarily concerned with constitutional rights, privileges, and immunities guaranteed to individuals. Instead, that section is simply part of a regulatory scheme which has as its purpose the elimination of "unfair method[s] of competition or an unfair or deceptive act[s] or practice[s] in the business of insurance." Ill.Rev.Stat. ch. 73, § 1030.

The federal statute is concerned with the preservation of individuals' constitutional rights; the state statute is concerned with the regulation and supervision of the insurance industry. Thus, it is clear that plaintiffs can challenge the complained-of activity in a state proceeding on a basis entirely different than their basis for a challenge in this Court.

The final issue is whether the plaintiffs have an adequate state administrative remedy.

## II. DO PLAINTIFFS HAVE AN ADEQUATE STATE ADMINISTRATIVE REMEDY?

Under the Illinois Insurance Code of 1937, the Director of Insurance has been given broad powers, including the power:

> . . . to examine and investigate into the affairs of every person engaged in the business of insurance in this State in order to determine whether such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice . . . .. Ill.Rev.Stat. ch. 73, § 1032.

The Code provides that whenever the Director shall have reason to believe that an insurance company is engaged in any unfair method of competition, "he *shall* issue and serve upon such [company] a statement of the charges" and set the matter for a hearing. Ill.Rev. Stat. ch. 73 § 1033(1) [Emphasis added]. Further,:

> Upon good cause shown, before the commencement of such hearing, the Director *shall* permit any person to intervene, appear and be heard at such

hearing by counsel or in person. Ill. Rev.Stat. ch. 73, § 1033(2). [Emphasis added].

If, after such hearing, the Director shall determine that the insurance company has engaged in an unfair method of competition, "he *shall* reduce his findings to writing and *shall* issue and cause to be served upon the person charged with the violation an order requiring such person to cease and desist from engaging in such method of competition . . .." Ill.Rev.Stat. ch. 73, § 1034(1) [Emphasis added]. The Code allows for judicial review of such cease and desist orders. Ill.Rev.Stat. ch. 73, § 1035. An intervenor in the hearing may also seek judicial review of the Director's report. Ill.Rev.Stat. ch. 73, § 1037.

This Court is of the opinion that the procedure outlined by the Illinois Insurance Code of 1937 is capable of providing an adequate administrative remedy for the complained-of-activity. The use of the mandatory "shall" throughout the Code in describing the powers of the Director distinguishes the administrative procedures in the instant case from the administrative procedures discussed in McNeese v. Board of Education, *supra*.

Finally, plaintiffs note that the state administrative remedy does not include the awarding of damages while the remedy which can be obtained through the instant suit under the Civil Rights Acts does. As to this issue, plaintiffs appear to be putting the cart before the horse. In order to award damages, this Court must find liability; in order to find liability, this Court must find that the plaintiffs have exhausted their administrative remedies. If at such time as the plaintiffs have exhausted their remedies and received no relief, it will be time enough to institute a suit similar to the instant one.

Accordingly, it is hereby ordered, adjudged and decreed that defendants' motion to dismiss is granted.